UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Josh Sanford, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>La-Z-Boy Inc.,<br><br>Defendant. | Judge:<br><br>Magistrate Judge:<br><br>Jury Demand Endorsed Hereon |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Josh Sanford ("Plaintiff") brings this Complaint and the following cause of action against Defendant La-Z-Boy, Inc. ("Defendant") alleging as follows:

### INTRODUCTION

1. This case involves a telemarketing campaign by Defendant who made phone calls to market its services by contacting numbers on the National Do Not Call Registry in plain violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (hereinafter referred to as the "TCPA").

2. The recipients of these illegal calls, which include Plaintiff and the Proposed Class, are entitled to damages under the TCPA, and because telemarketing campaigns send text messages *en masse*, the appropriate vehicle for recovery is a class action lawsuit.

1

# PARTIES

**Plaintiff Josh Sanford**

3. Plaintiff is an individual residing in Little Rock, Arkansas.

**Defendant La-Z-Boy Inc.**

4. Defendant is a domestic corporation headquartered in Monroe County, Michigan.

# JURISDICTION AND VENUE

5. Under 47 U.S.C. § 227 *et seq*., this Court has original jurisdiction over Plaintiff's TCPA claims because they raise a federal question of law.

6. Venue is proper under 28 U.S.C. § 1391(b) because Defendant is headquartered in Monroe[1] and the events giving rise to Plaintiff's cause of action occurred in the area that is subject to venue in the United States District Court for the Eastern District.

# TCPA BACKGROUND

7. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress

---

[1] https://lazboy.gcs-web.com/static-files/245978b7-36b4-4ee2-ae4c-6c2d0f59641d, at 18 (last visited: Oct. 24, 2023).

have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. Lexis 3544, at *5 (2020).

8. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

9. So long as a number appears on the National Do-Not-Call Registry, it is illegal for a company to place any telephone solicitations to that number. 47 U.S.C. § 227(c)(3)(F). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

10. One exception to this rule is that the TCPA allows a company to solicit a consumer whose phone number is on the National Do-Not-Call Registry when it has an "established business relationship" ("EBR") with that consumer. 47 U.S.C. § 227(a)(4) (excluding from the definition of "telephone solicitation . . . any person with whom the caller has an established business relationship"). The Federal Communications Commission defined an EBR to mean "a prior or existing relationship formed by a voluntary two-way communication between a[n] . . . entity and a" consumer on the basis of the consumer's "purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . , which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). Among other things, a consumer can terminate an

3

EBR with a company by asking the company to stop calling, even if the consumer continues to transact business with that company. *Id.* at § 64.1200(f)(5)(i).

11. A consumer whose number is on the National Do-Not-Call Registry and has received more than one telemarketing call within any twelve-month period by, or on behalf of, the same company in violation of the TCPA, can sue the company and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

12. It is simple for companies to avoid calling numbers listed on the National Do-Not-Call Registry. They can easily and inexpensively "scrub" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-Not-Call Registry, allowing companies to remove those numbers and ensure that calls are no longer placed to consumers who opt-out of telemarketing calls.

13. To avoid violating the TCPA by calling registered numbers, companies, *inter alia*, must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one (31) days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

14. Regulations implementing the TCPA also require companies to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once a company receives a request from a consumer not to receive calls, the number must be placed on the company's Company-Specific Do-Not-Call List (the "Internal Do-Not-Call List") within a reasonable time, not to exceed thirty (30) days from the date of the request. *Id.* at § 64.1200(d)(3).

15. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added). Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to a company's Internal Do-Not-Call List, the company "on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

16. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12937, ¶ 1

17. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See 1995 TCPA Reconsideration Order*; *Request of State Farm Mutual Automobile*

*Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

18. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

19. Industry data shows that the number of robocalls made each month increased form 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

20. According to the online robocall tracking service "YouMail," 4.5 billion robocalls were placed in January 2023 alone, at a rate of 145.5 million calls per day. [2]

21. The FCC has received an increased number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. [3]

22. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." [4]

23. "The FTC receives more complaints about unwanted calls than other Complaints combined." [5]

---

[2]  *See* www.robocallindex.com (last visited: April 17, 2023).

[3]  FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-helpcenter-data.

[4]  Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.

## FACTUAL ALLEGATIONS

24. Plaintiff submitted his phone number to the National Do-Not-Call Registry on or about July 9, 2009.

25. Defendant is one of the world's leading residential furniture producers and it markets furniture for every room of the home.

26. Defendant's agents compile phone numbers through lead generators to contact prospective buyers and sellers of real estate.

27. Defendant's agents then contact prospective buyers of residential furniture. In doing so, however, Defendant and its agents do not scrub phone numbers through the National Do-Not-Call Registry.

28. Defendant and its agents, in turn, contact individuals on the National Do-Not-Call Registry in direct violation of the TCPA.

29. Despite placing his phone number on the National Do-Not-Call Registry, Plaintiff was contacted by Defendant on five separate occasions as depicted in **Exhibit 1** to this Complaint—a total of 9 messages.

---

[5] Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016)

30. The following chart shows the text messages that were placed to Plaintiff's personal phone line after he terminated his relationship with Defendant:

| Date | Time | Texting Number | Number of Text Messages |
|---|---|---|---|
| May 25, 2023 | 11:53AM | 855-363-1711 | 1 |
| July 29, 2023 | 2:54PM | 855-363-1711 | 2 |
| August 23, 2023 | 10:43AM | 855-363-1711 | 2 |
| November 24, 2023 | 9:50AM | 855-363-1711 | 2 |
| December 26, 2023 | 10:16AM | 855-363-1711 | 2 |

31. At the time Plaintiff received each of these text message, Plaintiff's phone number had been on the National Do-Not-Call Registry for more than fourteen years.

32. Defendant, or someone acting on its behalf, violated Plaintiff's privacy by making each of the above referenced unwanted telemarketing text messages, and they constitute a nuisance as they are annoying and harassing. Plaintiff never gave Defendant authorization to market to him via text messages.

## CLASS ALLEGATIONS

**National Do-Not-Call Registry Class**

33. Plaintiff brings Count I of this action under Rule 23(b)(3) on behalf of a class tentatively defined as:

> All natural persons in the United States who, from January 2, 2021, to the commencement of this litigation who received more than one telephone solicitation (either phone call or text message) from Defendant in a 12-month period on their residential landline or cellular line telemarketing Defendant's products or service more than 31 days after registering their telephone number with the National Do-Not-Call Registry.

34. Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing this case, and any judge assigned to hear this action.

35. Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery.

36. Each of the persons identified in this National Do-Not-Call Registry has been harmed by the acts of Defendant because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and/or they were charged for incoming calls.

**The Action Meets the Requirements to be Certified as a Class**

37. Plaintiff is a member of the proposed class.

38. The proposed Class can be identified through telephone records and databases used in transmitting the telemarketing calls.

39. <u>Numerosity.</u> The number of Putative Class Members is believed to be in the hundreds or thousands, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

40. <u>Commonality.</u> There are questions of law and fact common to Plaintiff and to the proposed classes, including, but not limited to, the following:

    a. Did Defendant place, or have they placed, telemarketing calls to Plaintiff and the Putative Class Members?

    b. Whether Defendant' conduct violated 47 U.S.C. § 227(c) (the National Do-Not-Call Registry)?

    c. Whether Defendant willfully or knowingly violated 47 U.S.C. § 227(c) (the National Do-Not-Call Registry)?

    d. Whether Defendant willfully or knowingly violated 47 C.F.R. § 64.1200(d)(3) (the Internal Do-Not-Call List)?

    e. Whether the Defendant have Prior Express Written Consent or a still active Existing Business Relationship exemption that allowed them to make, or have made on their behalf, each of the calls made to Plaintiff and the Putative Class Members' residential lines?

41. <u>Typicality.</u> Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the proposed Putative Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the Proposed Putative Class.

42. <u>Adequacy.</u> Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the proposed Putative Class because his interests coincide with, and are not antagonistic to, the interests of the Members of the proposed Putative Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of Members of the proposed Putative Class.

43. <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the proposed Putative Classes' Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant' conduct and knowledge, not upon the effect of Defendant' conduct on Putative Classes' Members.

44. The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant' conduct. It would be virtually impossible for the Members of the proposed Putative Class to individually redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the Members of the proposed Putative Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

45. Class certification is appropriate because Defendant has acted on grounds generally applicable to the proposed Putative Class, making appropriate

equitable injunctive relief with respect to Plaintiff and the proposed Putative Classes' Members. Feed. R. Civ. P. 23(b)(2).

46. <u>Injunctive and Declaratory Relief Appropriate.</u> Defendant has acted on grounds generally applicable to the Putative Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Class appropriate on a class wide basis. Moreover, on information and belief, and based on his experience, Plaintiff alleges that the calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION
### COUNT I
**Violation of 47 U.S.C. § 227(c)**
**Telemarketing in Violation of the TCPA's Do-Not-Call Provisions**

47. Plaintiff incorporates the foregoing paragraphs of this Complaint.

48. In violation of 47 U.S.C. § 227(c), Plaintiff and all Members of the Do-Not-Call Registry Putative Class received telemarketing calls and/or text messages promoting the sale of Defendant's products or services on a residential phone line listed on the National Do-Not-Call Registry.

49. Plaintiff and the National Do-Not-Call Registry Putative Class Members received more than one such call in a twelve (12) month period.

50. By virtue of the foregoing, Defendant violated 47 U.S.C. § 227(c) as to Plaintiff and the Class and the National Do-Not-Call Registry Putative Class by

12

initiating, on more than one occasion, a telemarketing call and/or text message to the residential landlines of Plaintiff and the Members of the National Do-Not-Call Registry Putative Class without the prior express written consent or permission of Plaintiff or the Members of the National Do-Not-Call Registry Putative Class, and without there being an active non-terminated EBR with the Plaintiff or the Members of the National Do-Not-Call Registry Putative Class.

51. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each National Do-Not-Call Registry Putative Class Member is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant is found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each National Do-Not-Call Registry Putative Class Member.

52. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff, on behalf of himself and the National Do-Not-Call Registry Putative Class, also seeks injunctive relief prohibiting Defendant' violations of the TCPA in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and as a representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

  a. Certifying the proposed National Do-Not-Call Registry Class under Fed. R. Civ. P. 23 and appointing Plaintiff and his counsel to represent the National Do-Not-Call Registry Class;

  b. As to the National Do-Not-Call Registry Class, statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

  c. As to the National Do-Not-Call Registry Class, a permanent injunction restraining Defendant from making, or having made on their behalf, any additional non-emergency calls to residential landlines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party or at a time when no EBR exists between Defendant and the called party;

  d. Pre-judgment interest from the date of filing this suit;

  e. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

  f. All costs of this proceeding; and

  g. All general, special, and equitable relief to which Plaintiff and the respective Members of the National Do-Not-Call Registry and Internal Do-Not-Call List Class are entitled to by law.

Date:  January 2, 2024

Respectfully Submitted,

*/s/ Nick Suciu III*
Nick Suciu III  (Bar No. MI P72052)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
Email: gklinger@milberg.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial by the maximum number of persons permitted by law on all issues herein triable to a jury.

*/s/ Nick Suciu III*
Nick Suciu III  (Bar No. MI P72052)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com